Rosa Graciela **CRUZ**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. 83–2720(PG).**

United States District Court,
D. Puerto Rico.

July 10, 1984.

Aleida Varona, Puerto Rico Legal Services, Santurce, Puerto Rico, for plaintiff.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Plaintiff brought this action under Section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Secretary of Health and Human Services (the Secretary) terminating plaintiff's disability insurance benefits.

Plaintiff is a 49-year-old female (Tr. 23) with a high school education and a one-year nursing course. Her relevant work experience was as a practical nurse in Puerto Rico from 1962 to 1969 (Tr. 24–25, 50) and as a factory worker in a children's clothes factory in New York for some time thereafter (Tr. 25). It appears that plaintiff ceased working sometime during 1969 or 1970 (Tr. 91, 102).

Plaintiff filed an application for a period of disability and disability insurance benefits and thereafter was granted a period of

disability and disability insurance benefits commencing August 30, 1972, due to a nervous condition (Tr. 80). Upon reconsideration of plaintiff's condition, the Social Security Administration determined that her disability ceased as of June 1982. Consequently, plaintiff was advised that her entitlement to disability benefits terminated as of the last day of August 1982 (Tr. 39–45). Plaintiff sought reconsideration of this termination (Tr. 46), but her claim was denied (Tr. 47). Plaintiff requested a hearing (Tr. 48) and her request was granted. The Administrative Law Judge (ALJ) reviewed the case *de novo* and found that plaintiff's disability ceased on June 29, 1982 (Tr. 11–14). The ALJ's decision became the final decision of the Secretary when the Appeals Council approved it on August 29, 1983 (Tr. 2–4). Plaintiff appealed this decision to this Court.

■ It is clear that the Secretary may terminate disability benefits whenever she obtains evidence that a claimant's disability has ceased. 42 U.S.C. § 425; 20 C.F.R. 404.1590(a) and 404.1594(a). *See also, Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982). However, it is also certain that "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in absence of proof to the contrary that the condition has remained unchanged." *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir.1973). In other words, the prior finding of disability gives rise to a presumption that the disability still exists until the contrary is shown. *See, Brown v. Heckler*, 713 F.2d 441, 442 (9th Cir.1983); *Hall v. Celebrezze*, 314 F.2d 686 (6th Cir.1963).

■ Despite the existence of the presumption of continued disability in her favor, the claimant still bears the burden of proving the existence of a disability. *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir.1975); *Simpson, supra*, 691 F.2d at 969. All the presumption does is impose on the Secretary a burden of coming forward with evidence that the claimant's condition has changed. *Brown, supra*, 713 F.2d at 442, *citing Patti v. Schweiker*, 669

F.2d 582, 587 (9th Cir.1982). To meet his burden, the Secretary may present "current evidence showing that [the] claimant has improved to the point of being able to engage in substantial gainful activity ... [or] that claimant's condition is not as serious as was first supposed." *Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996, 998 (1st Cir.1975).

■ In reviewing the appeal of a termination of benefits case our duty is to "ascertain whether the Secretary's finding of *improvement* to the point of no disability is supported by substantial evidence." *Simpson, supra*, 691 F.2d at 969. *See also, González v. Harris*, 631 F.2d 143, 145 (9th Cir.1980), ("[o]n review of an agency determination that disability has ceased, the question is whether the finding of the agency is supported by substantial evidence."). Thus, the question now before us is whether the Secretary's determination that plaintiff's disability ended on June 29, 1982, is supported by substantial evidence.

The relevant evidence in this case can be summarized as follows. At the hearing before the ALJ plaintiff testified that she had to stop working because she was very nervous and depressed and because of her vertigo (Tr. 32). She stated that her nervous condition, arthritis and other "complaints" not mentioned by name force her to stay home under treatment (Tr. 32). Upon a question posed by the AJL, she stated that she has pain in the articulations and in her arms and legs, and that the pain, together with tension, do not let her sleep well (Tr. 35). Plaintiff also mentioned that she suffers from nasal and skin allergies (Tr. 36–37).

Plaintiff was examined by Dr. William Matos, a specialist in rheumatology and internal medicine. In a report dated June 2, 1982, (Tr. 94–97) Dr. Matos noted that plaintiff was in no distress. Although she appeared somewhat anxious, she was well oriented and cooperative. Dr. Matos found no evidence of joints effusions or enlargment. Regarding plaintiff's joints, the doctor found no swelling, tenderness or heat. The range of motion was normal without

difficulty to bend, kneel, grasp, pinch, push, pull or walk. X-rays taken of the cervical spine and of the right hand produced negative results. Plaintiff exhibited normal motor and sensitive reflexes. Dr. Matos' diagnostic impression was of anxiety reaction and arthralgias.

In addition, plaintiff's residual functional capacity evaluation (Tr. 96) revealed that plaintiff could stand or walk for seven (7) hours; sit for eight (8) hours; lift a maximum of 50 lbs; and frequently lift or carry 25 lbs. Plaintiff could use *both* hands for repetitive action such as grasping and pushing and/or pulling, and both feet for repetitive movements such as operating foot controls. Moreover, plaintiff could bend, squat, crawl, climb and reach above shoulder level frequently. Finally, Dr. Matos saw no need to impose any environmental restrictions on plaintiff's activities.

■ We agree with the ALJ that the medical evidence shows no severe physical impairment. Plaintiff presented no additional evidence other than her own allegations of pain and allergies that would contradict Dr. Matos' medical findings. Congress has chosen to provide disability benefits to those eligible persons whose impairment has a medically ascertainable source, *i.e.,* the impairment must be attributable to abnormalities demonstrable by medically acceptable techniques (42 U.S.C. § 423(d)(3). *See generally, Gallagher v. Schweiker,* 697 F.2d 82, 84–85 (2nd Cir. 1983).

The Social Security Administration regulations explicitly describe the manner in which symptoms, including pain, will be evaluated:

> The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that

could be reasonably expected to produce those symptoms.

20 C.F.R. 404.1529.

■ In the case at bar, not only are plaintiff's allegations of pain not corroborated by objective medical findings, but further, plaintiff has failed to produce any medical evidence identifying an underlying impairment. Thus, we affirm the Secretary's determination that plaintiff is not suffering from a severe physical impairment which limits her ability to engage in substantial gainful employment.

Regarding plaintiff's mental condition, the ALJ had before him the reports of two psychiatrists who had evaluated the plaintiff. Those reports were as follows:

Dr. Amparo Gonzalez Celado examined plaintiff at the request of the Social Security Administration on May 7, 1982. Plaintiff went to the doctor's office neatly and appropriately dressed; her personal hygiene seemed adequate. She had no makeup and looked depressed. In her report (Tr. 91–93) Dr. González stated that plaintiff appeared logical, coherent and pertinent in response to the interrogatory. Although plaintiff's psychomotor activity was of anxiety, the doctor stated that her verbalization was spontaneous and in an audible and paused tone. Plaintiff had no lax associations, and she appeared to be in contact with reality. Dr. González perceived no ideas of references nor deliriums. Her level of conscience was adequate, while her memory was diminished for past events. Plaintiff was oriented in the three spheres; however, her affect was inappropriate and her insight and judgment were poor. Her mood was depressed. Dr. González gave a diagnosis of hyspochonchiasis, atypical depression with anxiety disorder, and borderline personality disorder.

The second psychiatrist, Dr. Fausto Jimenez, examined plaintiff at the request of the Puerto Rico Legal Services on February 8, 1983. Plaintiff went to her interview with Dr. Jimenez well dressed. Dr. Jimenez states in his report (Tr. 102–103) that she was coherent, oriented and in contact with reality. However, she was observed

to be anxious; her affect was depressive; had some psychomotor retardation and difficulty in concentrating. Her memory for recent events was somewhat affected, and her judgment and abstraction were superficial. Dr. Jimenez' diagnosis was of dythmic disorder of chronic type and chronic anxiety, with a tendency towards severity. The doctor further stated that plaintiff continues to be disabled due to her mental condition, and, thus, could not engage in any type of substantial gainful employment.

■ It is settled that the resolution of conflicts within the medical evidence is a matter for the Secretary to determine. *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 130 (1st Cir.1981). Similarly, the determination of the ultimate question of disability is for the Secretary, not for the doctors or for the courts. *Id.,* at 128. *See also, Rodríguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981); *Torres Gutiérrez v. Secretary of Health, Education and Welfare*, 572 F.2d 7, 8 (1st Cir.1978); *González v. Richardson*, 455 F.2d 953, 954 (1st Cir. 1972). In each case, we must uphold the Secretary's findings if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion. Furthermore, in our review of the record we must bear in mind that it is within the Secretary's province to accord greater weight to the report of a medical expert commissioned by the Secretary. *Lizotte*, 654 F.2d at 130, *citing Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).

■ The mere existence of a mental disturbance is not *per se* a disability within the meaning of the Act. *Sitar v. Schweiker*, 671 F.2d 19, 20–21 (1st Cir.1982) (symptoms of depression and anxiety, absent evidence of functional loss, do not establish disability for purposes social security act), *citing Alvarado v. Weinberger*, 511 F.2d at 1049. The appropriate test is whether the mental impairment is of such severity that plaintiff cannot engage in any substantial gainful employment. *Id.* Considered as a whole, Dr. Matos' and Dr. González' find-

ings afford ample support for the Secretary's conclusion that plaintiff was capable of gainful employment. At least in the absence of firm clinical findings establishing a severe impairment, Dr. Jiménez' statements of total disability could reasonably have been rejected by the ALJ in the face of the other evidence. *See Id.,* at 22.

WHEREFORE, after conducting a thorough review of the record in this case, we cannot say that a reasonable mind could not have decided as did the Secretary, and we are, thus, constrained to AFFIRM her decision.

The Clerk of the Court shall enter judgment in accordance with this Opinion and Order.

IT IS SO ORDERED.